UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

HUMBERTO GONZALEZ and HENRY GUTIERREZ, :

Plaintiffs, :

    -against- :

THE LONG ISLAND RAILROAD COMPANY, :
GREGORY P. OLSON, individually and in his official :
Capacity as Signal Foreman, ANDREW MCGRATH, :
individually and in his official capacity as Signal :
Supervisor, and CHRISTOPHER KUHN, individually :
and in his official capacity as Assistant Foreman, :

    Defendants. :

-------------------------------------------------------------------- X

**MEMORANDUM AND ORDER**
18-cv-04010(DLI)(PK)

**DORA L. IRIZARRY, Chief United States District Judge:**

On July 12, 2018, Humberto Gonzalez ("Gonzalez") and Henry Gutierrez ("Gutierrez," collectively "Plaintiffs") filed the instant action against their employer Long Island Railroad Company ("LIRR"), as well as its employees Gregory P. Olson ("Olson"), Andrew McGrath ("McGrath"), and Christopher Kuhn ("Kuhn," collectively, "Defendants"). On November 7, 2018, Plaintiffs filed an Amended Complaint with five causes of action alleging employment discrimination and retaliation. On January 11, 2019, Plaintiffs voluntarily dismissed the third and fifth causes of action, that alleged violations under the New York City Administrative Code § 8-107 *et seq.* ("NYCHRL"). *See*, Pl.'s Stipulation of Dismissal ("Pl.'s Stip."), Dkt. Entry No. 22; *See also*, Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl.'s Mem."), Dkt. Entry No. 23. The three remaining causes of action, allege discrimination under Title 42 U.S.C. § 1981 ("§ 1981"), and discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Before this Court is the Defendant's motion to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P.

12(b)(6) for failure to state a claim.  For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## BACKGROUND

**I.       Plaintiffs' Background and Employment Status**

Plaintiffs are Hispanic and have been LIRR employees since May 1997.  Both Gonzalez and Gutierrez were hired as Assistant Signalmen and were promoted to the position of Signal Inspector in September 1999 and November 2000, respectively.  Am. Compl. ¶¶ 18, 20.  Plaintiffs belong to the Brotherhood of Railroad Signalmen Local 56 ("BRS"), pursuant to a Collective Bargaining Agreement ("CBA") between the LIRR and the BRS.  Am. Compl. ¶¶ 19, 21.

**II.      Denial of Overtime at WSY project**

On February 24, 2017, Kuhn, an Assistant Foreman, offered Plaintiffs an opportunity to work at the LIRR' s West Side Yard facility ("WSY project"), which afforded employees with "significant salary and overtime pay opportunities due to its overnight time requirements."  Am. Compl. ¶¶ 23-24.  However, when Plaintiffs arrived to work at the WSY project on February 27, 2017, Olson, a Signal Foreman, informed Kuhn that McGrath, a Signal Supervisor, intended to replace Plaintiffs with Caucasian employees.  Am Compl. ¶ 25.

Plaintiffs allege that they "possessed more seniority than McGrath's desired Caucasian employees."  Am. Compl. ¶ 26.  In addition, the Caucasian employees did not work on the WSY project for over seven days because they were on vacation.  Am. Compl. ¶ 26.  Pursuant to the CBA, an employee loses his overtime incumbency on a project if he does not work on the project for a period of seven days or more.  Am. Compl. ¶ 27.  The CBA further states that the incumbency in overtime projects reset every Monday, meaning that more senior employees may outbid junior employees on desirable overtime projects each week.  Am. Compl. ¶ 27.

2

Nevertheless, McGrath removed Plaintiffs from the WSY project and "crippled their ability to earn the significant overtime and regular time rates" that the WSY project allowed. Am. Compl. ¶ 28. As an alternative, the LIRR assigned Plaintiffs on the Brook Interlocking Project ("Brook project"), a different assignment that warranted less overtime hours. Am. Compl. ¶ 29. At that time, Plaintiffs did not file a grievance with the BRS because the LIRR also promised to provide Plaintiffs with other job opportunities that required more hours of work. Am. Compl. ¶ 29.

### III.    Inference of Racially Motivated Discrimination

However, in March 2017, when Plaintiffs did not receive the promised opportunities, they requested to be reinstated to the WSY project. Am. Compl. ¶ 30. Plaintiffs tried speaking with Olson about this request, but were instructed to speak with McGrath instead. Am. Compl. ¶¶ 30-31. When approached, McGrath referred Plaintiffs back to Olson. *Id.* On April 4, 2017, when Plaintiffs again asked Olson to reinstate them to the WSY project, Olson refused and stated Plaintiffs were, "in the Spanish gang," and "therefore not entitled to overtime on the WSY project." Am. Compl. ¶ 32. Agreeing with Olson, Kuhn called Plaintiffs "the Brown Gang" and stated that they could "speak Spanish and listen to Spanish music" together. Am. Compl. ¶ 32.

Soon thereafter, the LIRR paused all overtime work at the WSY project, which "erased all overtime incumbency" for it. Am. Compl. ¶ 34. On May 9, 2017, Plaintiffs once more requested to be reinstated to the WSY project, but were denied because Olson, McGrath, and Kuhn reduced the number of workers to be staffed on the project. Am. Compl. ¶¶ 36-37. Plaintiffs allege that this reduction violated the CBA and "was an unusual act specifically designed to prohibit Plaintiffs' inclusion." Am. Compl. ¶ 38.

### IV.    Reporting and Retaliation

On May 12, 2017, Plaintiffs informed James Ridley ("Ridley"), the BRS local chairman, about this violation.  Am. Compl. ¶ 39.  Ridley told Plaintiffs that the "[f]oreman is allowed to do anything he wants," and that Olson, McGrath, and Kuhn wanted "their own guys" for the WSY project.  Am. Compl. ¶ 40.  In June 2017, Plaintiffs reported the discrimination to Caroline Kumah-Marques ("Kumah-Marques") of the BRS Diversity Department.  Am. Compl. ¶ 41.  In response, Alan Wachtin ("Wachtin"), a BRS representative, "warned Plaintiffs that if they did not drop their charges, the LIRR would retaliate against them."  Am. Compl. ¶ 41.  Plaintiffs allege they did encounter further retaliation from Defendants when they were denied overtime shifts for a different project at the Long Beach location.  Am. Compl. ¶ 42.  In August 2017, Plaintiffs reported Wachtin's behavior to Kumah-Marques, but no investigation was ever conducted.  Am. Compl. ¶ 46.

Plaintiffs immediately tried to file a grievance about the retaliation with Ridley, the BRS local chairman, because the CBA contains a "sixty-day rule" or deadline for an employee to file a grievance, and the clock had started running on July 20, 2017 for this particular complaint.  Am. Compl. ¶¶ 43-44.  Ridley told Plaintiffs that their grievance "lacked merit" and refused to file it, but offered to provide the paperwork so they could file it on their own.  Am. Compl. ¶¶ 45, 47.  However, he provided Plaintiffs with the paperwork with only a day left before the sixty-day rule would expire.  Am. Compl. ¶ 47.  Plaintiffs were unable to file the grievance with BRS.  *Id*.

### STANDARD OF REVIEW

Subject matter jurisdiction is a threshold issue.  Thus, where a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the court must address the 12(b)(1) motion first.  *Sherman v. Black,* 510 F. Supp.2d 193, 197 (E.D.N.Y. 2007) (citing *Rhulen Agency, Inc. v. Alabama Ins. Guar.*

*Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990)).  It is axiomatic "that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress."  *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quotation marks omitted).  "If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*."  *Id.*

Federal subject matter jurisdiction exists only where the action presents a federal question pursuant to 28 U.S.C. § 1331 or where there is diversity jurisdiction pursuant to 28 U.S.C. § 1332.  *See*, *Petway v. N.Y.C. Transit Auth.*, 2010 WL 1438774, at *2 (E.D.N.Y. Apr. 7, 2010), *aff'd*, 450 F. App'x. 66 (2d Cir. 2011).  Federal question jurisdiction is invoked where the plaintiff's claim arises "under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  A case arises under federal law within the meaning of the general federal question statute only if the federal question appears from the facts of the plaintiff's well pleaded complaint.  *See*, *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908).

Under Fed. R. Civ. P. 8(a), pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), overruled in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (citations and internal quotation marks omitted). The plausibility standard "does not require 'detailed factual allegations,' but it demands more than [] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). *Iqbal* requires more than "a formulaic recitation of the elements of a cause of action." *Id.* at 681 (quoting *Twombly*, 550 U.S. at 555) (citations and internal quotation marks omitted). Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). On a motion to dismiss, the court accepts as true all well pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *LaFaro v. New York Cardiothoracic Grp., PLLC*, F.3d 471, 475 (2d Cir. 2009) (citations and internal quotation marks omitted).

## DISCUSSION

### I.    Subject Matter Jurisdiction

The threshold issue is whether the Court has subject matter jurisdiction over this action. In reviewing a motion to dismiss under Rule 12(b)(1), the Court must accept as true all material factual allegations in the Complaint, but the Court is not required to draw all reasonable inferences in Plaintiff's favor. *Cuello v. United States*, 2013 WL 1338839, at *6 (E.D.N.Y. Mar. 29, 2013) (citing *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)). Rather, the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence

that subject matter jurisdiction exists.  *Id.* (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  In analyzing a motion to dismiss for lack of subject matter jurisdiction, the Court may refer to evidence outside the pleadings.  *Zappia Middle E. Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

### A.    Preemption and the Railway Labor Act

Defendants contend that Plaintiffs' claims require interpretation of a CBA, and, therefore, are "minor disputes" that should be resolved under the administrative procedures provided for in the Railway Labor Act ("RLA"), 45 U.S.C. § 151.  The RLA was enacted to promote "the resolution of labor disputes in the railroad industry," and "establish[] elaborate administrative procedures for . . . both major and minor labor disputes."  *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 (1987).  Major disputes are "those arising out of the formation or change of collective bargaining agreements covering rates of pay, rules, or working conditions."  *Id.* at 563 (citing 45 U.S.C. § 153).  Minor disputes are those "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions."  *Id.*

"Although courts ordinarily defer to collectively bargained dispute-resolution procedures when the parties' dispute arises out of the collective-bargaining process, there are certain instances when arbitration may be inadequate to protect an employee's rights."  *Bates v. Long Island R. Co.*, 997 F.2d 1028, 1034 (2d Cir. 1993) (citing *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 735 (1981)) (internal quotations are omitted).  For example, the Second Circuit has found that "[w]hen an employee's statutory civil rights have been violated, arbitration should not be the sole avenue of protection."  *Id.*  Here, Plaintiffs allege violations of their civil rights under Title

VII and § 1981.  Thus, the RLA does not preempt Plaintiffs' statutory-based claims because these rights do not arise from a "minor dispute" exclusively within the CBA.

### B.      Federal Question Jurisdiction

Pursuant to 28 U.S.C. § 1331, Plaintiffs bring claims involving federal questions, alleging deprivation of Plaintiffs' civil rights.  *See*, *Petway*, 2010 WL 1438774 at \*2, *aff'd*, 450 F. App'x. 66 (2d Cir. 2011) ("Federal subject matter jurisdiction is available . . . when a 'federal question' is presented").  Additionally, all of Plaintiffs' claims under state law have been dismissed.  *See*, Pl.'s Stip.; *See also*, Pl.'s Mem.  Since Plaintiffs' claims raise questions arising under the laws of the United States, the Court finds that it has subject matter jurisdiction over the instant action.

### II.      § 1981 Claim

In their first cause of action brought pursuant to 42 U.S.C. § 1981, Plaintiffs assert a racially motivated discrimination claim against the LIRR as well as McGrath, Kuhn, and Olson in their official and individual capacities.  Am. Compl.  ¶¶ 48-52.  "All persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981.  The Defendants move to dismiss this claim because § 1981 does not create a private right of action against state actors.  *See*, Def.'s Mem. at 10-17.

The Supreme Court in *Jett v. Dallas Independent School District* held that § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."  491 U.S. 701, 735 (1989).  The Second Circuit reinforced this ruling in *Duplan v. City of N.Y.*, reasoning that, because § 1983 already provides a remedy against state actors, "there is no reason to infer from the rights-conferring language of § 1981(c) that it creates an additional, and duplicative, remedy." *Duplan*, 888 F.3d 612, 620-21 (2d

Cir. 2018).  Furthermore, "*Jett* has been interpreted to encompass not only governmental entities, but also individuals sued in their individual capacities who are also state actors." *Gonzalez v. City of N.Y.*, No. 17-CIV-6518 (GHW), 2019 WL 1407317, at *5 (S.D.N.Y. Mar. 28, 2019) (citing *Whaley v. City of Univ. of N.Y.*, 555 F. Supp.2d 381, 400-01 (S.D.N.Y. 2008)).

In this case, Defendants contend that the LIRR and its employees are state actors since the LIRR is a "public benefit corporation . . . existing pursuant to the Public Authorities Law of the State of New York."  Def.'s Mem. at 10; N.Y. Pub. Auth. L. § 1264 (declaring that metropolitan railroad transportation is a public benefit and an essential government function); N.Y. Pub. Auth. L. § 1261(16) (defining public benefit corporation as a type of state agency); *See, e.g., Roddini v. City Univ. of New York*, No. 02-CIV-4640 (LAP), 2003 WL 435981, at *5 (S.D.N.Y. Feb. 21, 2003) (explaining that "state employment has generally been deemed sufficient to render the [individual] defendant a state actor"). Thus, Defendants argue, Plaintiffs' claims under § 1981 fail as a matter of law because § 1983 is the exclusive remedy for violations under § 1981.  The Court agrees.  The LIRR, McGrath, Kuhn, and Olson are considered state actors and their alleged § 1981 violations have not been brought under the right remedy.  In light of the Supreme Court and the Second Circuit's holding that § 1981 does not create a private cause of action against state actors, the Plaintiffs are barred from asserting claims under § 1981 against Defendants.  Therefore, Plaintiffs' § 1981 claims are dismissed.

## III.    Title VII Claims

In their second and fourth causes of action, Plaintiffs assert racially motivated discrimination and retaliation claims under Title VII against the LIRR as well as McGrath, Kuhn, and Olson in their official and individual capacities.  *See*, Am. Compl. ¶¶ 53-59, 66-71.  Plaintiffs allege that: (1) they were subjected to discrimination when they were denied overtime

opportunities due to their race, and that (2) they were retaliated against for complaining about said discrimination. *Id*.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII also deems it unlawful for "an employer to discriminate against any of his employees . . . because [an employee] has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e–3(a).

### A.    Plaintiff Exhausted His Administrative Remedies

As a threshold matter, "[b]efore an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the U.S. Equal Employment Opportunity Commission ("EEOC") or the equivalent state agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e–5); *See also*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015). Next, a plaintiff must have received a "right to sue" letter from the EEOC. *See*, *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (citing *Legnani v. Alitalia Linee Aeree Italiene, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)). Here, it is undisputed that Plaintiffs administratively have exhausted their Title VII claims. On August 24, 2017, Plaintiffs filed a verified complaint alleging Defendants' unlawful discrimination and retaliation practices with the EEOC and received a right to sue letter from EEOC based on these allegations. Am. Compl. ¶ 6-8.

### B.    Title VII Claims Against The Individual Defendants

Plaintiffs filed suit against Olson, McGrath, and Kuhn, in their individual capacities alleging violations of Title VII. *See*, Am. Compl. ¶¶ 53-59. However, Title VII does not provide for individual liability, even against those with supervisory control. *See*, *Littlejohn v. City of New*

*York*, 795 F.3d 297, 313 (2d Cir. 2015) ("Title VII does not create liability in individual supervisors

and co-workers") (citing *Raspardo v. Carlone,* 770 F.3d 97, 113 (2d Cir. 2014)) (internal quotation

marks omitted); *See also*, *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10

(2d Cir. 2011) (stating that an "individual defendant . . . may not be held personally liable under

Title VII"). Accordingly, Plaintiffs' Title VII discrimination and retaliation claims against Olson,

McGrath, and Kuhn are dismissed.

>    C.    **The Title VII Discrimination Claim Against the LIRR**

Plaintiffs bring claims against the LIRR for violation of Title VII. *See*, Am. Compl. ¶¶ 53-

59. A Title VII employment discrimination claim is analyzed using the burden shifting framework

articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework,

the plaintiff bears the burden of establishing a *prima facie* case of discrimination by showing that:

"(1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered

an adverse employment action; and (4) that the adverse employment action occurred under

circumstances giving rise to an inference of discriminatory intent." *Tolbert v. Smith*, 790 F.3d

427, 435 (2d Cir. 2015).

"The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not

a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510, (2002). At the pleading

stage, "the allegations in the complaint need only give plausible support to the reduced prima facie

requirements that arise under *McDonnell Douglas*." *Littlejohn v. City of New York*, 795 F.3d 297,

316 (2d Cir. 2015); *See also*, *Vega v. Hempstead Union Free School District*, 801 F.3d 72, 84 (2d

Cir. 2015) ("a plaintiff is not required to plead a prima facie case under *McDonnell Douglas* . . .

to defeat a motion to dismiss.").

At this stage, "a plaintiff must plausibly allege that (1) the employer took adverse action

against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 87. The Second Circuit has emphasized that this burden is "minimal." *Id.* at 86. "On a motion to dismiss, the question is not whether a plaintiff is likely to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of unlawful discrimination." *Id*. at 87. For the reasons set forth below, the Court finds that Plaintiffs have met their burden and Defendants' motion to dismiss the Title VII claims is denied.

### 1. Adverse Employment Action

"An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega*, 801 F.3d at 87 (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). On February 24, 2017, Kuhn initially offered Plaintiffs the opportunity to work on the WSY project, which consisted of "significant salary and overtime pay opportunities due to its overnight time requirements." Am. Compl. ¶¶ 23-26. However, when Plaintiffs reported to the job site two days later, they were told that McGrath had removed them from the WSY project, and, thus, "crippled [Plaintiffs'] ability to earn the significant overtime and regular time rates" that the job would have afforded them. Am. Compl. ¶¶ 25, 28. Instead of the WSY project, Plaintiffs were given a less favorable job, which "only afforded [them] the opportunity to earn overtime on weekends with no additional regular time opportunities." Am. Compl. ¶ 29. The Court finds that this type of reduction in hours and pay amounts to "a materially adverse change in the terms and conditions of employment" that is "more disruptive than a mere inconvenience." *Brown v. City of Syracuse,* 673 F.3d 141, 150 (2d Cir. 2012); *Vega*, 801 F.3d at 85-87 ("Examples of materially adverse changes include . . . a demotion evidenced by a decrease in wage or salary"). Thus, Plaintiffs have pled sufficiently that the LIRR took an adverse employment action against them.

12

### 2. Whether Race Was a Motivating Factor

Plaintiffs allege that Defendants' adverse employment action was motivated by a racially discriminatory reason.  In order to show that a Plaintiff's "race, color, religion, sex, or national origin was a motivating factor in the [adverse] employment decision[,]" a plaintiff may meet this burden through "direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination."  *Vega*, 801 F.3d at 87 (citations omitted).  The requirement for showing circumstances giving rise to an inference of discriminatory intent is slightly relaxed at the pleading stage.  *Id.* at 84 (quoting *LittleJohn v. City of New York*, 795 F.2d 297, 306, 311 (2d Cir. 2015)).

One way in which a plaintiff can demonstrate discriminatory intent is by alleging facts sufficient to show that "the employer treated plaintiff less favorably than a similarly situated employee outside his protected group."  *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotations omitted); *See also*, *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014); *See*, *e.g.*, *Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010).  In determining whether an employee is similarly situated, courts look at whether plaintiff and his comparator were "(1) subject to same performance evaluation and discipline standards and (2) engaged in comparable conduct."  *Ray v. Weit*, No. 13-CIV-6416 (RRM)(CLP), 2016 WL 1229056, at *4 (E.D.N.Y. Mar. 28, 2016) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)). In addition, a "plaintiff may prove discrimination indirectly . . . by creating a mosaic of intentional discrimination by identifying bits and pieces of evidence that together give rise to an inference of discrimination."  *Vega*, 801 F.3d at 87 (2d Cir. 2015).

Here, Plaintiffs convincingly allege that they were replaced by similarly situated colleagues who were outside of their protected group.  Plaintiffs are both Hispanic and, thus, members of a

protected class. Am. Compl. ¶¶ 13-14. They have been working for the LIRR for over two decades, and have been promoted during their careers. Am. Compl. ¶¶ 18-20. Plaintiffs were qualified for the projects in question. *Id.* However, Plaintiffs were removed from the WSY project only to be replaced by Caucasian employees who were junior to them in experience. Am. Compl. ¶¶ 25-26.

Furthermore, there is ample evidence that the adverse employment action was influenced by "an inference of discrimination." Plaintiffs allege that they "experienced multiple instances of intentional discrimination based upon their race." Am. Compl. at ¶ 22. For example, they allege that Defendants referred to them as being part of the "Brown Gang" or "Spanish Gang" who can "listen to Spanish music together" by working on a separate and different assignment from the WSY project. Am. Compl. ¶ 32. Additionally, even though the CBA would afford Plaintiffs the right to work on the WSY project, Plaintiffs were told that "Olson, McGrath, and Kuhn wanted 'their own guys' on the WSY project," referring to all Caucasian employees. Am. Compl. ¶¶ 27, 40. Despite Plaintiffs' repeated requests to be assigned to the WSY project, Olson, McGrath, and Kuhn assigned less senior Caucasian employees. Am. Compl. ¶ 33. The Court finds that there is evidence of racially motivated discrimination here, and Plaintiffs sufficiently have pled the plausibility of the Title VII discrimination claims against LIRR. Accordingly, Defendants' dismissal motion is denied as to this claim.

### D.    The Title VII Retaliation Claims

Plaintiffs further allege that Defendants retaliated against them for their complaints about the discrimination. *See*, Am. Compl. ¶¶ 66-71. Title VII makes it unlawful for an employer to retaliate against any employee for "oppos[ing] any practice made unlawful by Title VII" or "made a charge, testified, assisted, or participated in a Title VII investigation or proceeding." *Littlejohn*

*v. City of New York*, 795 F.3d 297, 315–16 (2d Cir. 2015) (citing 42 U.S.C. § 2000e–3(a)).  To plead retaliation at the early stage, "a plaintiff must present evidence that shows (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id*. (internal citation and quotation marks omitted).

### 1. Protected Activity and Defendants' Awareness

Opposing an unlawful employment practice is a protected activity under Title VII. *See*, 42 U.S.C. § 2000e–3(a).  In this case, Defendants concede that Plaintiffs made complaints about being denied opportunities to work at the WSY project due to their race.  *See*, Def.'s Memo. at 18. Plaintiffs repeatedly notified the LIRR of the discriminatory acts committed by its employees. Am. Compl. ¶¶ 30-33, 36, 39, 41, 44, 46, 47.  Plaintiffs complained that they were wrongly removed from a favorable project because they are Hispanic, and replaced by less qualified employees who were Caucasian.  Am. Compl. ¶¶ 36, 41.  Moreover, Plaintiffs also made these same complaints to the union, which not only fell on deaf ears, but the response from union representatives confirmed the discriminatory motivation of the Defendants' actions.  Specifically, on May 12, 2017, Plaintiffs informed Ridley, the BRS local chairman, about this discrimination, and, Ridley responded that the "[f]oreman is allowed to do anything he wants," and admitted that Olson, McGrath, and Kuhn wanted "their own guys" for the WSY project.  Am. Compl. ¶ 40.  In June 2017, Plaintiffs complained to Kumah-Marques of the BRS Diversity Department, and Alan Wachtin, a BRS representative, who specifically warned Plaintiffs that, "if they did not drop their charges, the LIRR would retaliate against them." Am. Compl. ¶¶ 39, 41.  There is no question that Plaintiffs participated in a protected activity and Defendants were aware of it.

### 2. Adverse Employment Action

"[A]n adverse employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90 (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006)). Here, Defendants failed to rectify the reported discrimination and responded adversely. Plaintiffs allege that Defendants responded to the reports of discrimination as described above. Additionally, Defendants reduced the number of workers to be staffed on the project to "specifically . . . prohibit Plaintiffs' inclusion" to the WSY project. Am. Compl. ¶¶ 36-38. Furthermore, Wachtin, a BRS representative, outright threatened Plaintiffs with reprisal if "they did not drop their charges" with the Diversity Department. Am. Compl. ¶ 41.

Moreover, Plaintiffs "experienced further retaliation" when they tried to report another case of discrimination involving a project at the Long Beach location. Am. Compl. ¶ 42. Specifically, when Plaintiffs tried to file a grievance regarding this project, Ridley told Plaintiffs that their grievance "lacked merit" and refused to file it. Am. Compl. ¶¶ 45, 47. Plaintiffs allege that Ridley purposefully provided Plaintiffs with the required paperwork to file a grievance, with only a day left before the sixty-day deadline was to expire. Am. Compl. ¶ 47. Due to Ridley's efforts to dissuade and hinder Plaintiffs from filing any grievances, they were unable to file the complaint with BRS. *Id.*

### 3. Causal Connection

"As for causation, a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." Vega, 801 F.3d at 90; *See also*, 42 U.S.C. § 2000e–3(a). The connection "can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Id.* (citing to *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 217 (2d

16

Cir.2001)). Here, *inter alia*: (1) Wachtin directly threatened Plaintiffs with retaliation unless they "dropped the charges" with the Diversity Department; (2) Ridley purposefully held on to the required grievance paperwork from Plaintiffs to prevent them from filing a report in time; and (3) LIRR responded to the first discriminatory acts at the WSY project with another racially motivated discriminatory act by replacing Plaintiffs with less qualified Caucasian employees on the Long Beach project. As such, the Court finds that Plaintiffs properly asserted a causal connection between their protected activity and Defendants' retaliatory acts. Accordingly, Defendants' request for dismissal of the Title VII retaliation claim is denied.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the complaint is granted to the extent that the § 1981 claims are dismissed, and the Title VII claims against the Individual Defendants are dismissed, and the motion is denied as to the Title VII discrimination and retaliation claims against the LIRR.

SO ORDERED.

Dated: Brooklyn, New York
         September 30, 2019

                                                              /s/
                                                    DORA L. IRIZARRY
                                                        Chief Judge